**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Holly Geraci | ) | |
| | ) | |
|     Plaintiff | ) | Case No. 15 cv 2466 |
| | ) | |
| v. | ) | |
| | ) | Judge: |
| Union Square Condominium Association; | ) | |
| | ) | |
|     Defendants | ) | **Jury Demanded** |

## COMPLAINT

Plaintiff, Holly Geraci, by and through her undersigned counsel and complaining of the Defendants states as follows:

## NATURE OF THE CASE

1.     This is an action for injunctive relief and damages under the Fair Housing Act as well as supplemental state law claims under the Illinois Human Rights Act.

2.     Plaintiff lives in a 10 story building, and owns another unit in a 5 story, which comprise common elements known as Union Square Condominium Association. Plaintiff's units are on the top floors, so when she leaves, the elevators often open at other floors.  There are no freight elevators in either building.  People walking dogs are allowed to use the passenger elevators. There is no dog weight or breed limit, large dogs and pit bulls are common. Although there is a limit of 1 dog per unit, dog walkers often have 2 or more dogs on leash in elevators. No rule prohibits more than 1 dog in an elevator.

3.     No clear rule or restriction prohibits dog owners from entering an occupied elevator with one or more dogs:  the sole rule is that dog owners must "acquiesce" to concerns of those who do not want to ride in an enclosed space with dogs.  This vague rule is not posted or even

known by most owners, and is unknown to renters, visitors and dog walkers in general. Consequently, dog owners get hostile when asked to "acquiesce". This vague rule, using an obscure word of French origin[1], exists because the Board of Managers has always been controlled by dog owners, and the Board of Managers, for various reasons, has always enjoyed harassing the Plaintiff.

4.      Plaintiff has post-traumatic stress syndrome (PTSD) from being attacked by people and dogs, in enclosed spaces, including vehicles and elevators, at Union Square and prior to her purchase there, Over the past 10 years, Plaintiff has requested that Defendant enforce the only vague rule at Union Square that would make dog owners not force their way onto an occupied elevator with dogs. Defendant Association has refused any rule change or accommodation.

5.      Because of the lack of rules, enforcement, penalties, and lack of a dog-free elevator, and because dog walkers are often hostile when asked to take the next elevator, or even to keep their dog on a close leash, dog walkers often try to enter elevators already occupied by Plaintiff, forcing their way on, threatening, abusing, and even beating Plaintiff with their fists.

6.      Dog walkers have repeatedly attacked the Plaintiff because she has asked them to "acquiesce" to her fear of being in a small elevator with dogs. People with dogs, both in elevators and in common areas, have assaulted or battered, sworn at, threatened, intimidated, attacked or assaulted Plaintiff numerous times.

7.      Plaintiff reported these abuses to Defendants, who refuse any accommodation that would eliminate these attacks.

---

[1] : to accept, agree, or allow something to happen by staying silent or by not arguing. Merriam-Webster Dictionary. It is doubtful that anyone, especially a low paid dog walker, would be able to define the word "acquiesce", much less "acquiesce. Many dog owners are notoriously aggressive when asked to curb their pets, and dog bites are a major health issue in the U.S. See Exhibit A for references.

8.    Over the past 10 years, the Association and its managers have deliberately harassed and intimidated the Plaintiff, and encouraged others to use their dogs as weapons. Those actions finally resulted in a vicious attack on August 23, 2013 by a dog walker who called Mrs. Geraci a "troublemaker" and entered the elevator Plaintiff occupied, after refusing to "acquiesce" and take the next elevator, and beat her.

9.    Plaintiff has filed a state court lawsuit for damages from the attacks[2], which is attached hereto as **Exhibit A**. No FHA claims are pending in that or any other court.  **Exhibit A** contains many prior requests for accommodation relating to dogs and elevators, dating back to 2004, when dog owners succeed in turning Union Square from a dog-free building, into a dog free-for-all building.

10.    In November 2014, Plaintiff, thru counsel, notified the Association's attorney and registered agent, Stuart Fullett, that Mrs. Geraci suffered from post-traumatic stress disorder and had a fear of being in enclosed spaces (like elevators) with dogs, and provided him with a report from her treating Ph.D. psychologist stating that this was affecting her daily life, and she needed an accommodation because of it.

11.    Over the next 4 months, Plaintiff suggested various accommodations, but Stuart Fullett, the Association's attorney, has refused all of them, leaving Plaintiff no alternative but to ask for relief here, or continue to suffer, or to allow Defendants to force her abandon her home to preserve her health.

12.    Since the beating, and especially since the last request to Stuart Fullett, the Association has retaliated by maintaining the same unsafe conditions, aiding, abetting, and

---

[2] The FHA statute of limitations is only 1 year, and Plaintiff makes no FHA or Illinois Fair Housing Act injunctive or retaliation damages request in the state court suit. This suit is filed because the Defendant has refused any accommodation under the FHA or Illinois Fair Housing Act, and for damages in the last year and continuing.

approving the conduct of Plaintiff's attackers, and posting notices in the elevator calling out Plaintiff by name for suing the Association in state court.

## Jurisdiction and Venue

13. This Court has jurisdiction under 28 U.S.C. § 1331. As explained below, the actions of which the Plaintiff complains arise under the laws of the United States.

14. This Court has original jurisdiction over the Plaintiff's Fair Housing Act (42 U.S.C. § 3601 *et seq*) claims against the Defendants Union Square Condominium Association.

15. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise out of a common nucleus of operative facts – i.e. the Plaintiff's entitlement to a reasonable accommodation. This Court's assertion of jurisdiction over these claims will avoid overlapping and duplicative litigation, reduce expense, promote judicial efficiency and, eliminate the possibility of inconsistent results posed by parallel proceedings. Plaintiff anticipates that Defendants will move to transfer the state court breach of fiduciary duty and battery lawsuit to Federal Court so that those claims may be tried with the FHA claims, and Plaintiff has no objection to transfer and consolidation if the Court deems the damages claims inseparable from the FHA and state disability claims made herein.

16. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because all of the events occurred in the Northern District of Illinois.

## Parties

17. Plaintiff Holly Geraci resides at the Union Square Condominium development located at 333 W. Hubbard St., Chicago, Illinois 60654 making her a citizen of the state of Illinois.

4

18.    Union Square Condominium Association is a not-for-profit corporation organized under the law of the State of Illinois with its principal place of business in Chicago, Illinois. It controls and manages the hallways, elevators and common elements of the Union Square property.

## Factual Allegations Common to all Counts

19.    The Union Square Condominium Association consists of two buildings.  A 10 story (high rise) building in which Plaintiff owns #1006, and a 5 story building (low rise) where Plaintiff owns 5C.  As a top floor owner, she is subjected to riding down with anyone on the floors below.  Neither building has a freight elevator.  Dogs are permitted in passenger elevators.

20.    Defendant provides lock-off key to movers, contractors and residents, so they can have exclusive use of an elevator in the high rise building for periods as long as a whole day, but has refused to allow owners such as Plaintiff a lock-off key to ride down for 30 seconds.

21.    When Plaintiff purchased her residence in 1996, the Declaration prohibited dogs, which was one reason Plaintiff bought there.  However, in 2004, dog owners who had illegally brought in dogs obtained an amendment to the Declaration, stating:

Article V I, section 6 is deleted in its entirety and the following is inserted in its place:

"(a) no animals shall be raised, bread or kept in any unit or the common elements, except for dogs and cats (but not more than one (1) dog and two (2) cats per Unit), provided said breed are of a breed or variety commonly kept his household pets, are not bred for any commercial   purpose, are not allowed to run loose on the property, **or kept in strict accordance with such other rules and regulations relating to household pets as may be from time to time adopted or approved by the board,** and **do not, in the judgment of the board, constitute a nuisance to others.**  (emphasis supplied)

22.    Plaintiff participated on various Rules Committees, but the Board of Managers is influenced by dog owners[3] and was only a very weak vague rule regarding dogs entering elevators when asked not to:

> Pet owners should be aware that some people might have a fear or allergy to animals. Therefore they should be considerate of owners, occupants, and guests when sharing confined spaces. e.g., Elevators, mailroom, etc. and acquiesce to their concerns and requests. (See elevators)

This rule requires that persons ask dog walkers to take another elevator, instead of requiring dog walkers to ask it they may enter.   Although Plaintiff has asked the Association many times for better rules, all Boards have refused.

23.    There is nothing in the Bylaws under "elevators" pertaining to dogs.

## Long History of Criminal Attacks and Requests for Accommodation

24.    Beginning in 2003, Mrs. Geraci began reporting a string of assaults and batteries upon her within the Union Square buildings in general and on the elevators in particular.   Mrs. Geraci made these reports in writing.   Mrs. Geraci made no secret of the fact that she had a fear of dogs, although she is a long time dog owner and loves dogs. (dogs are usually attracted to her, also, as are most animals)

25.    On June 23, 2004, Mrs. Geraci filed a written complaint with the Association's manager, Lieberman Management Services, Inc., stating her fear of being with dogs on the elevators calling the conditions "dangerous."   The Association refused to react.

26.    On July 6, 2004, Mrs. Geraci again notified Lieberman Management in writing that she was not comfortable on the elevators which dogs and asked that the abovementioned "dog rule" be enforced.   Again, no action by the Association.

---

[3] At the time of the August 2013 attack on Plaintiff, 6 of 7 Board members owned dogs

27.    On September 9, 2004, Mr. Geraci notified the Board of Managers, in writing, that he and Mrs. Geraci were being harassed by dog owners and that the Rules were not being enforced.  Again, no action by the Association.

28.    On October 29, 2004 Mrs. Geraci was attacked in the elevator by another unit owner – a dog owner.  This unit owner was charged with battery.  Again, no action by the Association, and various incidents occurred for several years.

29.    On August 22, 2006, Mr. Geraci again notified Lieberman Management and the Board of Managers, in writing, that there was a problem with dogs at Union Square. The Association took no action, and various incidents occurred for several years.

30.    On February 7, 2009, Mrs. Geraci was once again the victim of an assault while on an elevator at Union Square.  This time she was barred from leaving the elevator by a man holding a large dog.  Mrs. Geraci reported the incident in writing and requested help. The Association took no action, and various incidents occurred for several years.  Mrs. Geraci was, unfortunately, far too patient, but has a large investment in her unit: it is unique because of the size and outdoor space, and it is almost impossible to find a similar unit to move to, although she had been looking for one she could afford since 2004, due to the dog situation and other oppression by the Board of Managers.

31.    In the fall of 2012, Mrs. Geraci was on the elevator when a dog walker, Robin DiBuono attempted to board with two dogs.  Mrs. Geraci asked DiBuono to "please take the next elevator."  DiBuono refused.  Mrs. Geraci informed DiBuono that there was a Rule requiring DiBuono to do so.  DiBuono responded "what rule?"

32.    On August 3, 2013 another unit owner, Dillon, attempted to board the elevator with his dog while Mrs. Geraci was already on board.  Mrs. Geraci asked the unit owner to take the

next elevator. This unit owner refused stating "I can't see you." Mrs. Geraci notified Lieberman Management in writing that same day.

33. On August 27, 2013, Mrs. Geraci was beaten by Robin DiBuono when the door opened on the 5th floor and DiBuono entered with 2 dogs and called Plaintiff a "troublemaker".

34. Other incidents too numerous to detail, including September 5, 2014, when a renter walked on to the elevator with a bulldog as soon as the doors opened, frightening Plaintiff, and then got highly offended when asked to wait, shouting "what rules?"

**Mrs. Geraci is a disabled person.**

35. Plaintiff suffers from post-traumatic stress disorder (PTSD) as the result of having been attacked by a dog, who jumped in the back seat of her car and mauled her, many years ago, and other attacks in elevators and enclosed spaces, which have made her claustrophobic and fearful. She moved to her 10th floor unit because it was originally a no-dog or small dog building, and had high ceilings and outdoor space so she could feel she was not in a confined space. Mrs. Geraci has been diagnosed as having post-traumatic stress disorder by a properly licensed clinical professional and provided that information to the Association's lawyer, Stuart Fullett.

**Formal Request for Accommodation**

36. The Association refused any accommodation up to October 2014 and hired an attorney, who announced at a Board meeting on September 25, 2014, that they disbanded the Rules committee, and hired Stuart Fullett's law firm to draft new rules and regulations.

37. Hoping that someone with some sense could now help in an accommodation to help his wife, in late October or early November of 2014, Plaintiff's husband wrote a letter to the

Association's attorney, Stuart Fullett, explaining that Mrs. Geraci is disabled within the meaning of the Fair Housing Act and suggested that:

       a.  she receive a key to the elevator so that she can ride it without fear of being in an enclosed space with a dog and without fear of facing another assault or battery or other crime;

       b. the Board of Managers pass, (and enforce) a more comprehensive rule regarding the presence of dogs on the elevators;

       c.  that the smaller elevator be limited to people in both buildings, if already occupied;

       d.  that dog walkers be informed of the rules.

### Count I – Disability Discrimination in Housing under the Federal Fair Housing Act 42 U.S.C. § 3604(f)

38.    The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 37 above as though fully set forth herein.

39.    Mrs. Geraci is a person with PTSD, a disability that limits one or more major life activities, namely the ability to enter and leave her residence without fear, and has other physical and mental symptoms.

40.    Mrs. Geraci requested that the Defendants grant her a reasonable accommodation

       a.  for a Rule regulating the presence of dogs on the elevators of the Union Square buildings and restricting dogs to the freight elevator in the high rise, as every other building with a freight elevator does;

       b.  requiring dogs to use the stairs in the low rise building which is a low 5 story building, or

   c. providing a lockoff key that they already provide to all the renters and owners who lock off the elevator for a whole day to move, (Plaintiff would only have the elevator locked off for 30 seconds once or twice a day, and is on vacation much of the winter)

   d. education and enforcement of the rules instead of encouraging attacks on her. so that Mrs. Geraci (or anyone else with PTSD) does not have to ride the elevators with dogs (of which she has a well-known and substantial fear).

41. Such an accommodation would assist Mrs. Geraci with her activities of daily living and afford her an equal opportunity to use and enjoy her home, including the common areas at Union Square.

42. Mrs. Geraci provided the Defendants with a signed note from a licensed psychiatrist documenting Mrs. Geraci's disability and her need for an accommodation.

43. The Defendants knew or should have known that Mrs. Geraci was a person with a disability.

44. The Defendants never expressed concern that Mrs. Geraci's request posed any cost or burden upon them. Indeed, the cost of passing a Rule is $0.00 and the cost of copying a key is de minimis.

45. The Defendants discriminated against Mrs. Geraci by refusing to make a necessary and reasonable accommodation by either giving Mrs. Geraci a key to the elevators or by passing a coherent and enforceable Rule regulating the presence of dogs in elevators in order to afford Mrs. Geraci an equal opportunity to use and enjoy her home, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B).

46.    By refusing to provide the reasonable accommodations requested by Mrs. Geraci; imposing unreasonable restrictions upon Mrs. Geraci's ability to use and enjoy her residence, including common areas; refusing to appropriately train management and staff and; repeatedly harassing Mrs. Geraci, the Defendants have discriminated against her on the basis of her disability, denied her the equal opportunity to use and enjoy her home in a manner similar to a person without a disability and, denied or otherwise made unavailable to her the full use of her home, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(1).

47.    By refusing to provide the reasonable accommodations requested by Mrs. Geraci; imposing unreasonable restrictions upon Mrs. Geraci's ability to use and enjoy her residence, including common areas; refusing to appropriately train management and staff and; repeatedly harassing Mrs. Geraci, the Defendants have discriminated against her in the terms, conditions and privileges of sale of her dwelling and in the provision of services and facilities connected with her dwelling on the basis of her disability and, denied her the equal opportunity to use and enjoy her home in a manner similar to a person without a disability, in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(2).

WHEREFORE, the Plaintiff, Holly Geraci respectfully requests that this Court enter a judgment as follows:

A.    Damages for all of Holly Geraci's compensable injuries in an amount to be proven at trial, plus interest and costs;

B.    Attorney fees and costs;

C.    Exemplary and punitive damages in an amount to be proven at trial;

D.    Injunctive relief requiring the Defendants to provide fair housing training to the Board of Managers of the Union Square Condominium Association

as well as the management and staff of the Union Square Condominium and Lieberman Management Services regarding federal, state and, local nondiscrimination laws, and Court monitoring of the same;

E.     Injunctive relief requiring the Defendants to provide a key to the elevators to the Plaintiff and to those other residents who may suffer from the same or similar conditions and Court monitoring of the same;

F.     Such further relief as this Court may deem just and proper.

## Count II – Disability Discrimination under the Federal Fair Housing Act 42 U.S.C. § 3617

48.     The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 47 above as though fully set forth herein.

## Retaliation

49.     After Plaintiff filed the state court suit (Exhibit A) and asked for accommodations such as rules changes and enforcement, the Association refused, and instead, hired an attorney, Stuart Fullett.

50.     After the attack in 2013, a dog owner, Mayer Becker, whose dog walker was involved in harassing Plaintiff, wrote a letter to Plaintiff apologizing, and offering to work with her to accommodate her and change the Rules.  Plaintiff and Becker communicated this to the Association.  The response from the Association was

a.    for the President, Jay Schiesser, to refuse to call the Rules Committee to meet, and

b.    for another Board member, Angelique Guinn, to move and disband the Rules Committee. Guinn is a dog owner, (and on information and belief was contributing to the dog walker Robin DiBuono's criminal defense fees, encouraging DiBuono to sue

Plaintiff, and voted to invite her back to have the free run of the premises after DiBuono attacked Plaintiff)

51.    In an open Board meeting on Sept. 25, 2013, The Board voted to disband the Rules Committee, and all committees, and hired Fullett to re-write the Rules and Regulations, but he has failed to do so.

Guinn: Oh, I move to disband all existing committees

Voice:  I second

Scheisser: it is been moved and seconded to disband all existing committees all those in favor?

Voices:  Aye.

Scheisser:  opposed? Motion passes.

Guinn: I move to authorize Stewart Fullett and his firm

Fullet:  It's Fullet.

Guinn: Fullet, Rosenlund and Anderson, to review and redraft the existing rules and regulations.

Voice:  second

Scheisser; there is been a motion to hire Fullett Rosenlund and Anderson to review and redraft the existing rules and regulations. It has been seconded, all in favor?

Voices:  Aye

Scheisser:  Opposed?  The motion passed. Now we just have this last motion.

Guinn:  I move to appoint Fullet Rosenlund and Anderson to take any action to defend any pending legal action

Male voice:  I second that.

Scheisser:  it is been moved and seconded to appoint Fullet Rosenlund and Anderson to take any action to defend any legal action, all in favor?

52.    The purpose of disbanding all committees was to isolate Mrs. Geraci further, since she was an active member on the Rules and Beautification committees, and to insure that no dog rules were passed.

53.    The Association then approved a $30,000 payment to Fullett's law firm.

54.    Fullett has published articles explaining that Associations and HOAs should liberally grant accommodations instead of harassing disabled people.  But instead of writing sensible rules to accommodate the Plaintiff in the dog/elevator situation, Fullett entered his appearance in the state court litigation, and tried to get it dismissed.  When that failed, he refused to re-write the rules.  He is now representing the Association against the Plaintiff in that suit, a serious potential conflict of interest, since the Association as a corporation has no interest in promoting attacks on Plaintiff, nor in denying her a reasonable accommodation:  it is the Board members who Fullett really represents, using Association's money to further their interests.

55.    Although Defendant's Managers know that Plaintiff is afraid to use the elevators, they have also retaliated by closing her roof deck off and refusing to allow her to use it for the past 4 years, further adding to the symptoms of PTSD, and to gain leverage in the state court legislation.  Plaintiff can neither enter nor exit her apartment without fear, and cannot go outside on her roof deck.  The Association's Board of Directors knows that the more she tries to get outside, the more she will have to use the elevators and be exposed to people using their dogs as weapons, and they continue to refuse accommodation to further torment her and retaliate, in hopes that she will move and sell her unit at a loss.

56.    Plaintiff has become so disturbed by this that, in addition to medical treatment, she was forced to contract to buy another condo elsewhere.  There, because of the bizarre situation at Union Square, she negotiated a private elevator access for her in the Declaration, to avoid the

problems the Association and its Board and attorneys have caused her at Union Square. However, she has been unable to move because that purchase was subject to a right of first refusal that is in litigation. So, she is now trapped at Union Square for at least 2 more years

57.    The Association's attorney has sought to embarrass and harass Plaintiff by delving into to her medical history, the nature of her disability, and purporting to require an invasive form, medical records, a physician statement instead of a licensed medical professional, and a statement from a physician signed under penalty of perjury.

58.     When Plaintiff asked Fullett for an accommodation in October 2014, after getting nowhere with the Association, Fullett sent her forms that purported to require that a physician provide a report "under penalty of perjury." (**Exhibit B.**)

59.    Plaintiff provided Fullett a report from her treating Ph.D. Psychologist, who is licensed by the State of Illinois as qualified to treat humans for psychological conditions.   A physician is not required, nor is any "penalty of perjury" statement:   that is the start of the harassment and retaliation Plaintiff has suffered.

60.    On information and belief, Board members have also paid the legal fees of DiBuono, to assist her in defending the battery charge, and to actually file a counterclaim against Plaintiff, and the Association's attorney, Fullett, has co-operated with her attacker

61.    Mrs. Geraci's disability substantially inhibits one or more major life activities:   she is now afraid to enter or leave her home because dogs come first in elevators and hallways. The Board of Managers has long been controlled by dog owners, and now 1/3 of units are rented, many to dog owners, and there is no weight limit, no breed limit, no freight elevators, no rules: only dog owners forcing their way into passenger elevators, and attacking the Plaintiff with the full support and encouragement of the Defendants. Now, the Board has an attorney who is

further retaliating to force Plaintiff to move, when she cannot. This situation is akin to being in a war zone, or being stalked, and PTSD is well documented to be exacerbated, and in fact caused, but repeated assaults and batteries and attacks, which Defendants want to continue by denying any accommodation

62.     The Association, through its Board of Managers, and their management company, Lieberman Management Services, have stepped up their campaign against Plaintiff, in retaliation for her repeated requests for accommodation under the Act. At a meeting of the Board of Directors on January 30, 2015, the Board allowed an unidentified male in his 30's to stand up and announce that "we should do everything we can to devalue their unit", referring to the Plaintiff and her husband. No Board member said a word, but instead encouraged this person to persist in open attacks on the Plaintiff, which has worsened her condition.

63.     On December 3, 2014, Mr. Geraci forwarded Plaintiff's treating psychologist's letter to Mr. Fullett and again requested a key to the elevator for Mrs. Geraci. (**Exhibit C**)

64.     On December 5, 2014, Mr. Fullett acknowledged receipt of the psychologist's letter and informed Mr. Geraci that the Board would review the matter. Mr. Fullett stated that the Association would inform the Geraci's of their decision "within a reasonable time period or if additional information is required."

65.     On February 3, 2015, Mr. Geraci again contacted Mr. Fullett in an attempt to obtain a decision on the request for reasonable accommodation for Mrs. Geraci. On February 5, 2015, Mr. Fullett once again responded that the "Board" would review the request.

66.     On March 5, 2015, Mr. Fullett refused any reasonable accommodation, in a letter to Plaintiff's counsel (**Exhibit D**) which stated:

> Pertaining to the modified request for an accommodation/modification, such is further addressed below.

1.     Request for a private key for the small elevator in the high rise building and the sole elevator in the low rise building for any party.

Response: Based on the failure and refusal to provide information as requested by the Association, it is difficult to ascertain certain information as to whether or not an accommodation is required or if there is a nexus between the complained of condition and the request.  While the Association will consider  all reasonable options to accommodate the disabled there remains a safety concern, including the ability of an individual to lock up the elevator and impede ingress and access for other occupants.   Additionally, what would be the solution if an individual is in the elevator and has a serious medical condition while inside with sole access? What about if a move is occurring in the building?  There may also be code considerations that come into play.

2.     Restricting dogs to the larger elevator in the 10 story building, requiring people with dogs to simply wait for another elevator if the larger elevator is occupied in the high rise and restricting dogs to only empty elevators.

Response:  The nexus comments above are applicable to these requests.  In addition, while the Association will consider all reasonable options to accommodate the disabled, assuming an accommodation is warranted, there does seem to be problems with your request including that which is stated above. Additionally, as a former dog owner you and your wife are likely aware of the time limitation when a dog has to go outside.

3.     Providing stiff sanctions for violations and requiring registration, picture identification, dog licenses and vaccinations.

Mr. P. Geraci
March 5, 2015
Page Three

Response:  While there does not appear to be a nexus with regard to the complained condition and this request, the revision to the rules and regulations will take certain matters into consideration  as  to violations and additional requirements.

4.     Installing cameras with sound in elevators, or at least in the elevator lobbies.

Response:  While again there does not appear to be a nexus with regard to this request and the complained condition, this would be a request for a modification.  Similar to other requests, the Association would  certainly  consider  this issue.   However, please provide additional information, including how you propose that this is paid for and implemented.

Based on your prior comments and while I understand that you do not believe such, the Association continues to be fully prepared to engage in a meaningful, good-faith dialogue with you and Mrs. Geraci for the purpose of reaching an effective and amicable solution to this matter and remains committed to participating in such an interactive process. Feel free to let me know if you and Mrs. Geraci would like to meet to discuss these matters.

Mr. Fullett's comments are disingenuous:  he is the author of a seminar on the FHA.  He

suggests using "failure to engage in meaningful…" on page 14 of a paper on FHA, **Exhibit E**, as

17

a method to defeat a reasonable accommodation, which would cost the Association nothing. He knows that Plaintiff spends winters away from Chicago, and so is delaying until she has to spend another summer afraid to use her elevator. He raises all kinds of reasons for his refusal, yet in that paper, gives a very low standard for having an "emotional support animal", with almost no "nexus" or proof of any life affecting condition. He is also getting paid as a defense lawyer in the state court case, and will garner fees from continuing to refuse any accommodation.

67. The Association has also retaliated in January, by posting one or more bulletins in the Elevators, suggesting that Mrs. Geraci is somehow at fault for filing a lawsuit for her injuries, or for the Board's other breaches of fiduciary duty. Until Plaintiff made her formal FHA request, these "bulletins" contained only innocuous announcements like "Edna Vulic will be on vacation so the management office will be closed" and "Movies in the Park" announcements. Since the FHA request, the tone of the "bulletins" is that Plaintiff is a troublemaker, and at least one used her name. This has encouraged at least one dog owner to duplicate the Association's characterizations of Plaintiff from the elevators, and put them under unit owner doors.

68. By repeatedly refusing to provide the reasonable accommodations requested by Mrs. Geraci; repeatedly imposing unreasonable restrictions upon Mrs. Geraci's ability to use and enjoy her residence, including the common areas; repeatedly refusing to appropriately train management and staff; repeatedly harassing and humiliating Mrs. Geraci, the Defendants have coerced, intimidated, threatened and, interfered with Mrs. Geraci's exercise and enjoyment of the rights granted and protected by 42 U.S.C. § 3604(f) of the Fair Housing Act, in violation of the Fair Housing Act, 42 U.S.C. § 3617.

WHEREFORE, the Plaintiff, Holly Geraci respectfully requests that this Court enter a judgment as follows:

A. Damages for all of Holly Geraci's compensable injuries in an amount to be proven at trial, plus interest and costs;

B. Attorney fees and costs;

C. Exemplary and punitive damages in an amount to be proven at trial;

D. Injunctive relief requiring the Defendants to provide fair housing training to the Board of Managers of the Union Square Condominium Association as well as the management and staff of the Union Square Condominium and Lieberman Management Services regarding federal, state and, local nondiscrimination laws, and Court monitoring of the same;

E. Injunctive relief requiring the Defendants to provide a key to the elevators to the Plaintiff and to those other residents who may suffer from the same or similar conditions and Court monitoring of the same;

F. Such further relief as this Court may deem just and proper.

## Count III – Disability Discrimination in Housing under the Illinois Human Rights Act 775 ILCS 5/3-101 *et seq.*

69.     The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 68 above as though fully set forth herein.

70.     By refusing to provide the reasonable accommodations requested by Mrs. Geraci; imposing unreasonable restrictions upon Mrs. Geraci's ability to use and enjoy her residence, including common areas; refusing to appropriately train management and staff and; repeatedly harassing Mrs. Geraci, the Defendants have discriminated against Mrs. Geraci on the basis of her disability and have deprived Mrs. Geraci of the equal opportunity to use and enjoy her home in a manner similar to a person without a disability, in violation of the Illinois Human Rights Act, 775 ILCS 5/3-101 *et seq*.

19

WHEREFORE, the Plaintiff, Holly Geraci respectfully requests that this Court enter a judgment as follows:

A.   Damages for all of Holly Geraci's compensable injuries in an amount to be proven at trial, plus interest and costs;

B.   Attorney fees and costs;

C.   Exemplary and punitive damages in an amount to be proven at trial;

D.   Injunctive relief requiring the Defendants to provide fair housing training to the Board of Managers of the Union Square Condominium Association as well as the management and staff of the Union Square Condominium and Lieberman Management Services regarding federal, state and, local nondiscrimination laws, and Court monitoring of the same;

E.   Injunctive relief requiring the Defendants to provide a key to the elevators to the Plaintiff and to those other residents who may suffer from the same or similar conditions and Court monitoring of the same;

F.   Such further relief as this Court may deem just and proper.

### Count V – Disability Discrimination in Housing under the Chicago Fair Housing Ordinance § 5-8-010 *et seq*

71.   The Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 70 above as though fully set forth herein.

72. By refusing to provide the reasonable accommodations requested by Mrs. Geraci; imposing unreasonable restrictions upon Mrs. Geraci's ability to use and enjoy her residence, including common areas; refusing to appropriately train management and staff and; repeatedly harassing Mrs. Geraci, the Defendants have discriminated against Mrs. Geraci on the basis of her disability and have deprived her of the equal opportunity to use and enjoy her home in a manner

similar to a person without a disability, in violation of the Chicago Fair Housing Ordinance, § 5-8-010 *et seq.*

WHEREFORE, the Plaintiff, Holly Geraci respectfully requests that this Court enter a judgment as follows:

A.  Damages for all of Holly Geraci's compensable injuries in an amount to be proven at trial, plus interest and costs;

B.  Attorney fees and costs;

C.  Exemplary and punitive damages in an amount to be proven at trial;

D.  Injunctive relief requiring the Defendants to provide fair housing training to the Board of Managers of the Union Square Condominium Association as well as the management and staff of the Union Square Condominium and Lieberman Management Services regarding federal, state and, local nondiscrimination laws, and Court monitoring of the same;

E.  Injunctive relief requiring the Defendants to provide a key to the elevators to the Plaintiff and to those other residents who may suffer from the same or similar conditions and Court monitoring of the same;

F.  Such further relief as this Court may deem just and proper.

/s/Jefferey O. Katz
Attorney for Holly Geraci
Jefferey Ogden Katz (#6283209)
The Patterson Law Firm, LLC
One North LaSalle Street, Suite 2100
Chicago, Illinois 60602
Direct (312) 750.1817
Main (312) 223.1699  Ext. 104
Fax (312) 223.8549
jkatz@pattersonlawfirm.com

/s/ Jonathan Parker
Attorney for Holly Geraci
Geraci Law, L.L.C.
55 E Monroe St. #3400
Chicago IL 60603-5710
312-499-6201 fax 1-877-247-1960
Par@geracilaw.com