# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HOLLY GERACI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNION SQUARE CONDOMINIUM ) <br> ASSOCIATION, ) <br> ) <br> Defendant. ) | Case No. 15 C 2466 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Holly Geraci filed suit against Union Square Condominium Association, alleging that Union Square denied her request for accommodations and retaliated against her in violation of the Fair Housing Act and the Illinois Human Rights Act. Union Square has moved for summary judgment.

## Background

Geraci owns a condominium unit on the north side of Chicago in a building managed by Union Square. Union Square's primary responsibility is to maintain the common areas of the building. Geraci's unit is situated on the top floor of the building, and she has lived there since the year 2000. Union Square permits its residents to own dogs and to bring their dogs into common areas of the building, with the caveat that "[p]et owners should be aware that some people might have a fear [of] animals" and should "acquiesce to their concerns and requests" when sharing confined spaces such as elevators. Pl.'s Ex. 147 at 25.

1. **Geraci's experiences with dogs and her accommodation requests**

Geraci says that she has a fear of dogs. She has had claustrophobia from a young age, but her claustrophobia became more severe after she had a traumatic experience with a dog in a confined space. Def.'s Ex. 11 (Geraci Dep.) at 49:18-23, 61:21-62:24. Geraci described, "I was in the back seat of my dad's two-door [car and] a huge German Shepherd jumped into the car and bit me from head to toe and nobody could get the dog off of me." *Id.* at 52:19-53:5. She suffered over forty bites and had to be taken to a local hospital. *Id.* at 53:6-24. After that incident, Geraci developed a fear of medium-to-large dogs. *Id.* at 54:13-22. And although Geraci owned a Cairn terrier from 1985 to early 2000 that she says weighed ten pounds, she contends that her fear of larger dogs did not dissipate during that period. *Id.* at 56:16-61:6. In fact, she testified that she tried to avoid situations in which she and her dog would be exposed to other dogs. *Id.*

Upon moving into her unit, however, Geraci had several negative encounters with dogs and their owners. She attributed these occurrences to Union Square's alleged non-enforcement of its pet policy. From 2004 to 2013, Geraci filed several incident reports with Union Square alleging that residents violated the building's pet policy. For example, on June 23, 2004, Geraci reported that a dog walker came into the building with four dogs at one time, which she said created a "dangerous" situation. Pl.'s Ex. 149 at 0596. On July 6, 2004, Geraci wrote, "please . . . inform [the dog walkers] not to get on elevators when asked not to." *Id.* at 0602. And on August 11, 2013, Geraci reported that a dog walker, Robin DiBuono, "tried to board the elevator without asking." *Id.* at 0826. Union Square did not act on any of Geraci's reports. On

August 27, 2013, Geraci had an altercation with DiBuono in an elevator—an incident that Geraci would later describe as an attack in which she received a "beating" from DiBuono. Geraci Dep. at 83:15-23.

In October 2013, Geraci was diagnosed with post-traumatic stress disorder. She testified during her deposition that she now lives in a perpetual state of fear that prevents her from being able to sleep or to leave her home. *Id.* at 82:3-21, 83:1-20; Pl.'s Resp. at 11-12. On October 29, 2014, Geraci, through her husband Peter Geraci, submitted to Union Square a request for an accommodation under the FHA. Def.'s Ex. 12. Geraci asked Union Square to "modify an elevator in each building to provide [her] with a key to provide ability to ride non-stop, so she is not forced to ride with dogs." *Id.* The letter stated that Geraci "is very afraid of being in an enclosed space with dogs, due to a history of being attacked." *Id.* In response to her request, Union Square asked Geraci to provide a physician's certificate. Def.'s Ex. 15. Geraci sent Union Square a letter from her psychologist, Dr. Kathy Goggin, dated November 25, 2014. Dr. Goggin wrote, Geraci's "diagnosis is Post Traumatic Stress Disorder (PTSD; DSM-IV 309.81) . . . . Accommodations which would address repeated and unexpected re-exposure to fearful stimulus situations would be beneficial to her well-being and efforts to resolve the PTSD." Def.'s Ex. 16. On December 5, 2014, Union Square informed Geraci that it would evaluate her request but reserved the right to ask for further documentation if necessary. Def.'s Ex. 17. On February 3, 2015, Geraci supplemented her accommodation request to include a request that Union Square enforce its pet policy and install cameras in the building's hallways and elevators. Def.'s Ex. 18. On March 5, 2015, Union Square informed Geraci that "based on [her] failure and refusal to provide

3

information as requested [the physician's certificate] . . . it is difficult to ascertain certain information as to whether or not an accommodation is required or if there is a nexus between the complained of condition and the request." Def.'s Ex. 20.

**2.     Litigation initiated by Geraci**

In addition to this case, Geraci has filed three other lawsuits against Union Square. The Court discusses these in detail because Union Square contends that her failure to assert her FHA claim in the other cases bars the present federal suit under the doctrine of claim preclusion.

    **a.     The personal injury suit**

On January 2, 2014, Geraci filed suit in state court against DiBuono, Union Square, and others seeking to recover for injuries she said she had received from her August 2013 altercation with DiBuono. She asserted claims against DiBuono for assault and battery and alleged that DiBuono "intentionally, willfully and maliciously intended to cause physical and mental injury to [Geraci] by her attack" on August 27, 2013. *Id.* ¶ 149. DiBuono filed a cross-claim alleging that Geraci had committed a battery against her.

In the same suit, Geraci asserted claims against Union Square to recover for the same injuries, alleging that the association breached a duty of care in failing to enforce its pet policy and that this caused the August 27, 2013 attack to occur. Pl.'s Ex. 112 at 4. On August 6, 2014, the state court dismissed Geraci's claims against Union Square, concluding that it had a duty to maintain the elevators but no duty "to avoid Injuries by a third party's criminal conduct." Pl.'s Ex. 108 at 4. Geraci moved for leave to amend her complaint to include a claim against Union Square for breach of fiduciary duty. The

court granted the motion in October 2014 but ultimately, in June 2015, dismissed Geraci's claims against Union Square. The court stated that "[w]hile it is true that [Union Square] w[as] required by Section 18.4 of the Condominium Act to exercise the 'care required of a fiduciary' in performing [its] duties (735 ILCS 604/ 18.4)," Union Square had "no duty under Section 18.4 to protect [Geraci] from attacks by third parties, whether that duty consisted of policing the common elements of the building or enacting a Pet Rule more to [Geraci's] liking." Pl.'s Ex. 112 at 5-6.

The case proceeded to trial in 2016 on Geraci's and DiBuono's claims against each other. On July 13, 2016, a jury found in favor of DiBuono on Geraci's battery claim and on DiBuono's battery counterclaim and awarded her $150,000 in compensatory damages and $125,000 in punitive damages. Def's Ex. 21.

  b.  **The roof deck fiduciary duty suit**

On January 21, 2014—shortly after Geraci filed the personal injury suit—she and her husband filed a second state court suit, this one against Union Square and its board members. She claimed breaches of fiduciary duty in relation to decisions that Union Square made regarding her roof deck that she said violated the association's bylaws. Pl.'s Ex. 123 at 12. Geraci also alleged that Union Square had constructively evicted her from her unit because contractors it hired caused damage to her roof deck, the association prevented Geraci from repairing the deck, and it improperly refused to repay her for the damage caused by the contractors. *Id.* On May 18, 2015, the court dismissed the fiduciary duty suit, finding that Geraci's allegations were "not supported by any proper reference to any well-pleaded allegations in the Complaint, nor by any proper discussion of the Declaration or Bylaws." *Id.* at 13.

5

### c. The roof deck injunction suit

On August 11, 2014, Geraci and Peter Geraci filed a third suit, this one in the Chancery Division of the Circuit Court of Cook County. *See* Def.'s Ex. 7. In the chancery suit, filed against Union Square, Geraci alleged that the association had barred her from accessing her roof deck, had been openly hostile toward her, and had no intention of repairing her roof deck or allowing her to repair it herself. *Id.* ¶¶ 38, 43. Geraci sought an injunction directing Union Square to make repairs and allow her access to the deck. *Id.* ¶ 43. On January 8, 2015, the state court dismissed the chancery suit with prejudice. Def.'s Ex. 8.

### d. The present Fair Housing Act suit

Finally, Geraci filed the present lawsuit on March 23, 2015. At that point, it appears, two of the three state court cases were still pending—all but the roof deck injunction suit. In counts 1 and 3 of her complaint in the present case, Geraci alleges that Union Square's failure to accommodate her disability violated section 3604(f) of the Fair Housing Act (FHA) and section 3 of the Illinois Human Rights Act (IHRA). 42 U.S.C. § 3604(f); 775 ILCS 5/3-102.1. She alleges in count 2 that Union Square violated section 3617 of the FHA, 42 U.S.C. § 3617, because it took "various retaliatory measures" against her for asserting her rights under the FHA, specifically, continuing to bar her from completing her roof deck, encouraging residents to verbally attack her, and publically divulging her private information. Geraci also asserts a claim under the Chicago Fair Housing Ordinance (count 5). The complaint does not include a count 4.

## Discussion

Union Square has moved for summary judgment on all of Geraci's claims. It

argues that Geraci's claims are precluded because they involve the same cause of action as the personal injury, fiduciary duty, and chancery suits, which were fully adjudicated. Union Square also argues that even if Geraci's claims are not precluded, she is unable to show that it refused to grant her reasonable accommodations. Finally, Union Square contends that the record does not support Geraci's assertions that it retaliated against her in violation of the FHA.

Summary judgment is appropriate where the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

**A.     Claim preclusion**

Union Square argues that Geraci's FHA claims are precluded by the doctrine of *res judicata*, or claim preclusion, because they are based on the same operative facts as her personal injury, roof deck fiduciary duty, and roof deck injunction suits filed in state court.

A federal court will apply the same preclusive effect to a state court judgment as the state would apply. 28 U.S.C. § 1738; *see Allen v. McCurry*, 449 U.S. 90, 95 (1980). In order for claim preclusion to apply, "there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of action, and (3) the

7

same parties . . . ." *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1079 (7th Cir. 2011) (applying Illinois law). If these conditions are satisfied, then claim preclusion "will bar not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit." *Id.* at 1080.

Illinois's "rule against claim-splitting, which is an aspect of the law of preclusion, prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 340, 665 N.E.2d 1199, 1206 (1996). There is an exception to this rule when the parties consent to splitting the plaintiff's claims. *Altair Corp. v. Grand Premier Trust & Inv., Inc.*, 318 Ill. App. 3d 57, 63, 742 N.E.2d 351, 356 (2000). A party may consent to claim-splitting through acquiescence, "which may occur by not timely objecting." *See Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 785 (7th Cir. 2016) (applying Illinois law). For example, in *Lawler*, the Seventh Circuit concluded that the defendants acquiesced to claim-splitting because they "waited more than 18 months to raise *res judicata* as a potential affirmative defense . . . [and] did not provide any reason for the delay." *Id*.

Geraci filed her complaint in this case on March 23, 2015. In early May 2015, Union Square sought and obtained an extension of time to prepare its response to the complaint. But that response, filed on June 5, 2015, made no mention of claim preclusion, and the response was an answer to Geraci's complaint, not a motion to dismiss the case on the ground that Geraci was improperly splitting her claim and instead should file it as part of one of the state court cases. Union Square's first mention of the issue of claim preclusion was not until October 16, 2015, seven months

8

after Geraci filed her complaint, when it asked the Court for leave to amend its answer to include an affirmative defense of *res judicata*. At that point, fact discovery in this case was almost over; it was set to end on November 2, 2015 (though it was later extended by four weeks). And even then, Union Square did not press the claim preclusion issue by seeking dismissal or summary judgment, even though it clearly had all the ammunition that would have enabled it to argue that Geraci was improperly splitting her claim. Instead, Union Square did not seek a ruling until it filed the present motion for summary judgment, in late August 2016, nearly eighteen months after Geraci filed the present suit. In the interim, both this case and the state court cases proceeded in parallel fashion. The Court concludes that Union Square acquiesced in any claim-splitting by failing to take reasonably prompt steps to bring the preclusion issue to a head.

Even if there were no acquiescence, Union Square's claim preclusion defense fails on its merits. There is no dispute that this lawsuit and Geraci's state lawsuits involve the same parties. It is also undisputed that Geraci's state law claims were adjudicated on their merits. But Union Square's argument founders on its contention Geraci's state law claims and her FHA claims amount to the same cause of action, as Illinois requires for claim preclusion to apply.

Illinois courts use the "transactional test" to determine what constitutes the same cause of action for purposes of claim preclusion. Under this test, "separate claims will be considered the same cause of action . . . if they arise from a single group of operative facts, regardless of whether they assert different theories of relief . . . ." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 310, 703 N.E.2d 883, 893 (1998).

9

Separate claims may be part of the same cause of action "even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.* A court determines pragmatically what "factual grouping constitutes a transaction or a series of connected transactions." *Potash Corp. of Saskatchewan*, 664 F.3d at 1079-80 (internal quotation marks omitted). To that end, a court may give "weight to such considerations as whether the facts are related in time, space, origin, or motivation . . . ." *Altair,* 318 Ill. App. 3d 57, 62, 742 N.E.2d 351, 355. Claim preclusion applies if, "given the similar nature of the claims and their temporal proximity, most parties would expect them to be tried together." *Id.*

Geraci's FHA claims and state law claims assert different theories of relief, arise from different events, and cover different periods of time. Starting with the personal injury suit, Geraci's state law claims involved the actions of DiBuono and Union Square leading up to the August 27, 2013 altercation. Geraci sought to recover for injuries she claimed to suffer as a result of the incident. In short, it was a personal injury suit. This is not altered by the fact that Geraci also sued Union Square; she was attempting to impose liability on the association for the same personal injuries. The present FHA claims have an entirely different focus. Besides having a different subject matter, the current claims arise from Union Square's alleged failure to accommodate Geraci's disability *following* the August 2013 incident.

Geraci's claims in this case do not arise out of Union Square's failure to enforce its pet policy, nor do they arise from the association's actions prior to August 2013 that Geraci contends led to the DiBuono incident. Rather, her FHA claims arise out of Union Square's actions following her requests for accommodations under the FHA, all of which

10

postdated the August 2013 incident. Though both suits make reference to Union Square's enforcement of its pet policy, Geraci's claims in the personal injury suit involved the association's alleged failure to enforce the policy over several years *preceding* the August 2013 incident. And although Geraci may rely on earlier events in the present suit to provide background, the operative facts for her claims in this suit involve the facts bearing on whether she was entitled to an accommodation after first requesting one in October 2014 and the appropriateness of Union Square's actions or inaction thereafter.

Union Square argues that Geraci's current suit and her accommodation requests are tied to the August 27, 2013 incident because her requested FHA accommodations were intended to prevent further dog attacks. Def.'s Mot. for Summ. J. at 9. That might be a result of a successful accommodation, but it mischaracterizes the legal basis for the accommodation requests. Geraci contends that she sought the accommodations to prevent exposure to situations that might trigger her PTSD or related symptoms.

The Court concludes that Geraci's state personal injury claims and her federal claims do not arise from the same transaction. The Seventh Circuit in *Lawler* considered a similar factual scenario and came to the same conclusion. There, the plaintiff, Lawler, brought a discrimination suit in federal court, alleging that her former employer, a school district, violated the federal Rehabilitation Act by failing to accommodate her disability and by retaliating against her by giving her an unsatisfactory performance review that resulted in her termination. *Lawler*, 837 F.3d at 784. Lawler then filed a state court action, alleging that the school district wrongfully terminated her employment under a state statute. *Id.* at 784-85. The state court

11

decision, later upheld on appeal, was decided first. The state court found that the disputed statute permitted the school district to discharge teachers who had received unsatisfactory ratings. *Id.* at 785. In the federal case, the school district contended that Lawler's federal discrimination claims were precluded because they involved the same cause of action as her state case. *Id.* Even though Lawler claimed in the federal case that her unsatisfactory rating (a key point in the state court suit) was a result of the school district's failure to accommodate her disability, the Seventh Circuit determined that Lawler's federal discrimination claims had "little, if any, overlap" with Lawler's state claims, partly because her negative performance review occurred years before the district initiated the program that it used as justification for terminating Lawler. *Id.* at 786.

Union Square points out that the events that led to the present lawsuit were known while Geraci's personal injury suit was pending. It argues that by the time of the dismissal of the state court claims against Geraci in June 2015, "nearly all, if not all, of the complained of conduct [alleged in the present case] had already occurred," Def.'s Reply at 7, and thus Geraci could have amended her complaint in the personal injury case to assert her FHA claims. The Court notes that there is no basis in the record to draw a conclusion that Geraci had a basis to file her FHA claims much before the date she filed this action, March 23, 2015; it was not until March 5, 2015 that she received Union Square's response to her accommodation request. That aside, Union Square offers no basis to believe that Geraci actually could have amended her complaint in state court to include her FHA claims, i.e., that the judge in the personal injury case would have, at that point, entertained adding claims that did not involve the personal

injuries claimed in that case. In any event, the Court is unaware of a rule that would require Geraci to amend her claims in the personal injury case to include separate claims under a separate body of law (the FHA) that arose from a separate sequence of events.

Finally, the roof deck fiduciary duty suit and the roof deck injunction suit have no preclusive effect on Geraci's claims in this case. In the fiduciary duty suit, Geraci alleged that Union Square constructively evicted her from her unit because contractors it hired caused damage to her rooftop deck and the association prevented Geraci from repairing her deck and improperly refused to repay her for the damage caused by the contractors. This is completely unrelated to Geraci's claims in this case, both in time and in subject matter. In the injunction suit, Geraci alleged that the Union Square had barred her from access to the roof deck; she sought an injunction directing Union Square to make repairs to her roof and allow her access to the deck. It is true that one of Geraci's contentions in the present suit is that Union Square barred her from repairing her rooftop deck in retaliation for asserting her rights under the FHA. But the suits are otherwise unrelated. And significantly, the retaliation that Geraci alleges in the present case largely occurred after the roof deck injunction suit had been dismissed.

For these reasons, the Court overrules Union Square's contention that it is entitled to summary judgment on the basis of claim preclusion.

**B.     Failure to accommodate**

Union Square contends that, even if claim preclusion does not bar Geraci's claims, it is still entitled to summary judgment because Geraci cannot establish the elements of an FHA claim for denial of reasonable accommodation.

13

The FHA requires "reasonable accommodations in rules, policies, practices, or services" as may be "necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling." *Hemisphere Bldg. Co. v. Vill. of Richton Park*, 171 F.3d 437, 438 (7th Cir. 1999). To sustain a claim for failure to accommodate under the FHA, the plaintiff must show that: "(1) she suffers from a disability or is associated with someone with a disability; (2) defendant knows of the disability or reasonably should be expected to know of it; (3) an accommodation may be necessary to give the plaintiff an equal opportunity to use and enjoy the dwelling; and (4) the defendant refused to make a reasonable accommodation." *Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F. Supp. 2d 800, 808 (N.D. Ill. 2011). The plaintiff must show that the proposed accommodation is reasonable. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002). A reasonable jury could find that Geraci meets this burden.

First, Geraci presents evidence sufficient for a jury to find that she suffers from a disability. An individual is disabled under the FHA when she: "(1) physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). The definition of a disability under the FHA is substantively identical to that in the Americans with Disabilities Act (ADA). *Oconomowoc Residential Programs, Inc.*, 300 F.3d at 782. The ADA says that a disability substantially limits a major life activity if it gets in the way of "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working . . . ." 42 U.S.C. § 12102; 29 C.F.R. § 1630.2(i); *see Wis. Cmty. Servs., Inc. v.*

14

*City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006). Geraci has offered evidence that she suffers from PTSD and that it substantially limits major life activities—her ability to sleep and her ability to leave her home and care for herself. For example, Dr. Goggin diagnosed Geraci with PTSD and indicated that accommodations would help in resolving her condition. Geraci also testified that her sleep became "dramatically worse" after the August 27, 2013 incident and that she developed a need to "retreat" and isolate herself. Geraci Dep. at 82:23-83:7, 84:21-85:17.

Union Square argues that Geraci cannot claim that she suffers from PTSD triggered by the August 27, 2013 incident because the jury in the personal injury suit found that she instigated the attack. This, however, has no bearing on whether Geraci has PTSD, and in any event there is no indication that the jury made any finding regarding Geraci's mental condition. The Court concludes that a reasonable jury could find Geraci has a disability.

Second, Geraci has offered evidence from which a reasonable jury could find that Union Square was aware of her disability by, at the latest, late November 2014. Geraci provided Union Square with a letter from Dr. Goggin dated November 25, 2014, in which Dr. Goggin stated Geraci's "diagnosis is Post Traumatic Stress Disorder (PTSD; DSM-IV 309.81)." Def.'s Ex. 16. Union Square acknowledged receipt of Dr. Goggin's letter in an e-mail dated December 5, 2014. Def.'s Ex. 17.

Third, Geraci provides evidence that her requested accommodation is necessary to give her an equal opportunity to use and enjoy her dwelling. Union Square does not dispute that, if Geraci suffered from a disability, she would be entitled to a reasonable accommodation under the FHA. Union Square does not address the reasonableness of

15

Geraci's proposed accommodations in its brief, and thus the Court need not address this point for purposes of the summary judgment motion.

Finally, Geraci presents evidence sufficient for a jury to find that Union Square denied her requests for accommodation. During the period from November 2014 through March 2015, Union Square requested and Geraci provided documentation confirming her disability and need for accommodations. As noted above, Geraci's psychologist, Dr. Goggin, explained that "[a]ccommodations which would address repeated and unexpected re-exposure to fearful stimulus situations would be beneficial to [Geraci's] well-being and efforts to resolve [her] PTSD." Def.'s Ex. 16. In an attempt to do just this, Geraci sought accommodations that would reduce or prevent her exposure to dogs in confined spaces. She provided Union Square with several options that would prevent her from having to be in an elevator with a dog—the situation that she said had triggered her PTSD. Union Square's response was that "it is difficult to ascertain certain information as to whether or not an accommodation is required or if there is a nexus between the complained of condition and the request." Def.'s Ex. 20. A jury reasonably could find that Union Square made, at best, a perfunctory effort to deal with Geraci's request and fell short of what the FHA requires.

**C.    Retaliation**

Union Square also moves for summary judgment on Geraci's FHA retaliation claim (count 2). Section 3617 of the FHA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. To prevail on a claim under section 3617, a plaintiff must show that (1) she is

protected under the FHA; (2) she was engaged in the enjoyment or exercise of her FHA rights; (3) defendants were at least partly motivated by an intent to discriminate; and (4) defendants coerced, intimidated, threatened, or interfered with the plaintiff on account of her FHA-protected activity. *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). A plaintiff may prove discriminatory intent by showing a "pattern of harassment" that is "invidiously motivated." *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004).

Geraci's evidence is sufficient to permit a reasonable jury to make the necessary findings, though perhaps just barely. The Court sets aside for this purpose her contention that Union Square's request for medical confirmation of her condition was retaliatory, because the law permitted the association to request the FHA to ask her for documentation supporting the existence of her disability and her need for accommodations. *See Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d 891, 895 (7th Cir. 1996) ("If a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue."). But her other evidence would permit a reasonable jury to find that Union Square singled her out in an effort to turn other residents of the building against her. Geraci cites the Association's publication of "litigation updates" in April and August 2015 that it allegedly caused to be place under the door of each unit in the building. She contends Union Square had not previously done this regarding other litigation. Geraci says these documents included information about her disability. Pl.'s Ex. 104 at 132:12-133:18. Geraci also contends that Union Square held a building "public forum" to discuss her lawsuits in May 2016, allegedly to incite unit owners to retaliate against

17

her. Again, she contends that the association had not done this on any prior occasion, suggesting that it was singling her out. At the forum, residents blamed Geraci for "the harm that [she caused] for the building and all the residents in this building." Pl.'s Ex. 102 ¶ 24. The attendees allegedly applauded in approval. A reasonable jury could infer from this evidence that Union Square acted as it did to turn Geraci's fellow residents against her and that it succeeded. Union Square has offered non-discriminatory justifications for its actions, but its intent is genuinely disputed and will have to be determined by a jury.

### D. Illinois Human Rights Act

Section 3 of the IHRA makes it a civil rights violation "to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 775 ILCS 5/3-102.1. The IHRA and FHA are "similar in language and intent," and therefore Illinois courts look to federal law in "interpreting and determining whether housing discrimination has occurred." *Hughes v. Illinois Dep't of Human Rights*, 2011 IL App (1st) 093528-U, ¶ 21, 2011 WL 10068723, at *3. Because the Court found that a reasonable jury could find in Geraci's favor on her FHA failure to accommodate claim, the same is true of her parallel IHRA claim (count 3).

### E. Chicago Fair Housing Ordinance

In addition to the claims discussed above, Geraci has asserted a claim of discrimination under Chicago Fair Housing Ordinance § 5-8-020. Both parties have now agreed that Geraci is barred from bringing this claim because the statute does not confer a private right of action. Geraci, however, asks this Court to dismiss her claim

without prejudice so that she may file a complaint with the Chicago Commission. Pl.'s Resp. at 20. The Court grants Geraci's request and dismisses count 5 of her complaint without prejudice.

## Conclusion

For the reasons stated above, the Court dismisses count 5 of plaintiff's complaint without prejudice but otherwise denies defendant's motion for summary judgment [dkt. no. 83]. The case is set for a status hearing on February 2, 2016 at 9:30 a.m. for the purpose of setting a prompt trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 26, 2017